UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-MJ-6300-STRAUSS

IN RE: SEALED COMPLAINT

_____/

**CRIMINAL COVER SHEET**

FILED BY ___AT___ D.C.

Jul 1, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?   No.

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No.

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   No.

4. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: _____
Quinshawna S. Landon
Assistant United States Attorney
Florida Bar No. 99835
99 N.E. 4th Street
Miami, FL 33132
Tel: No. (305) 961-9362
E-mail: Quinshawna.Landon@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Willan Pupo and Joel Castillo,<br><br>Defendant(s) | Case No. 24-MJ-6300-STRAUSS |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _at least February 6, 2024 through the present_ in the county of _Broward_ in the _Southern_ District of _Florida_, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1029(b)(2) | Conspiracy to commit access device fraud |
| 18 U.S.C. § 1349 | Conspiracy to commit wire fraud |
| 18 U.S.C. § 1956(h) | Conspiracy to commit money laundering |

FILED BY ___AT___ D.C.

Jul 1, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_Audrey Fernandes_
Complainant's signature

SA Audrey Fernandes, United States Secret Service
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_FaceTime_ (specify reliable electronic means)

Date: July 1, 2024

_Jared Strauss_
Judge's signature

City and state: Fort Lauderdale, Florida       Jared M. Strauss, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Audrey Fernandes, a Special Agent with the United States Secret Service ("USSS") being first duly sworn, depose and state under oath as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Secret Service ("USSS") and have been employed as such since September 2022. I am currently assigned to the Miami Field Office, in Miami, Florida. I have received extensive training in financial crimes investigations as well as investigative techniques related to electronic crimes, identity theft, wire fraud, bank fraud and other financial crimes against the government. During my employment with the USSS, I have investigated financial crimes related to violations of Title 18 of the United States Code and allegations of criminal fraud involving the financial infrastructure of the United States of America among other crimes. I am, therefore, an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, which empowers me to conduct investigations of, and make arrests for, violations of Title 18 of the United States Code.

2. This Affidavit is submitted in support of the attached criminal complaint which charges Willan Pupo ("PUPO") and Joel Castillo ("CASTILLO") with conspiracy to commit access device fraud, in violation of Title 18, United States Code, Section 1029(b)(2), conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 and conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h).

3. The information set forth in this Affidavit comes from my personal involvement in this investigation, as well as from information provided to me by other law enforcement officers and people with knowledge of the case. This Affidavit does not represent every fact law enforcement knows about this investigation but is submitted for the limited purpose of establishing probable

cause for the issuance of the criminal complaint against PUPO and CASTILLO for the aforementioned criminal violations.

## FACTUAL BACKGROUND

4. In April of 2024, the USSS received information that PUPO, CASTILLO, and other individuals ("SUBJECTS") are engaged in an ongoing credit card charge-back scheme. Specifically, the SUBJECTS, using shell companies, rent point-of-sale terminals ("POS DEVICE"), a device that allows businesses to accept and facilitate payments from customers and keeps track of sales, from a credit card processing company (the "Merchant Processor"). The SUBJECTS use the Merchant Processor's POS DEVICE to conduct fraudulent transactions, often using stolen credit card numbers, and the proceeds are deposited into a bank account that is registered with the POS DEVICE. The SUBJECTS then withdraw the funds from the bank account. Owners of the credit cards call their issuers to dispute the charges, and their credit card issuers reverse the payments using a process called a "charge back." Because the bank account registered with the POS DEVICE no longer has any funds, the Merchant Processor is left to incur the loss.

5. The Merchant Processor is a registered Independent Sales Organization/Merchant Service Provider of Wells Fargo Bank, N.A. in Concord, California, and Synovus Bank in Columbus, Georgia. The company provides payment processing solutions for small businesses, including POS DEVICEs. During the time relevant to the facts of this investigation, the Merchant Processor was a financial institution as defined by 18 U.S.C. § 20.

2

## Downtown Delray Account

6.   On or about February 6, 2024, an individual who identified himself as S.C. submitted a Merchant Processing Application and Agreement ("Downtown Delray Application") to the Merchant Processor to acquire a POS DEVICE for a business named Downtown Delray, LLC. S.C. listed his business address as 16055 NW 57th Avenue, Miami Gardens, Florida 33014 ("the Purported Downtown Delray Address"), submitted a driver license, a voided check, and a bank statement from a Space Coast Credit Union ("SCCU") account ending in x8531 ("Downtown Delray Account").

7.   On or about February 13, 2024, the POS DEVICE was delivered to the Purported Downtown Delray Address. An individual identified as Pedro received it and signed the delivery slip. Thereafter, between on or about February 14, 2024, through on or about March 13, 2024, a total of 268 charges, totaling $975,565.10, were made using the POS DEVICE. Within a day of the first transaction, credit card companies began receiving calls to dispute the charges. As of March 12, 2024, a total of 144 transactions were reported as either fraudulent or "service not provided." The credit card companies demanded that the funds be returned, but the proceeds in the Downtown Delray Account had been dissipated. The Merchant Processor reimbursed the credit card companies, incurring a loss of approximately $966,000. The Merchant Processor disabled the POS DEVICE and reported the matter to law enforcement.

8.   USSS Special Agents reviewed the Downtown Delray Application submitted to the Merchant Processor and identified the driver license associated with Downtown Delray Application as fictitious. S.C.'s driver license included a picture of a black male, but the driver license indicated that S.C. was a female. A search of the Florida Driver and Vehicle Information Database

("DAVID") revealed that the driver license number was associated with the name S.C., but the picture was of a white or Hispanic male. The issue dates for the driver licenses were also different.

9. USSS agents also learned that the bank statement and the voided check submitted with the Downtown Delray Application were also identified as fraudulent. SCCU confirmed the Downtown Delray Bank Account was under a different name and business address. SCCU also stated that the bank statement was falsified because the balance on that particular bank statement did not match SCCU's records. SCCU further relayed that there was another account linked to the account ending in x8531—a second checking account ending in x8523.

10. S.C. electronically signed the Downtown Delray Application using DocuSign, a software that allows parties to sign contracts and other documents electronically. Upon signing the application, the software automatically stamped it with the IP address of the device used to sign the document: 66.176.225.61. Comcast records establish that PUPO was the subscriber of the IP address at the time the Downtown Delray Application was signed. The service address for the IP address was 1141 SW 156th Ave, Pembroke Pines, FL 33027 ("PUPO's Residence").

11. Agents went to the purported Downtown Delray Address and identified a storefront under the business name WTW Customs and World of Tires & Wheels. Records from Florida's Division of Corporations website ("Sunbiz") showed that WTW Customs was located at 821 N Military Trail, West Palm Beach, Florida 33415 and that two of its managers were PUPO and CASTILLO. Records from Sunbiz also show that World of Tires and Wheels, Inc. was registered to the address 16065 NW 57th Ave, Hialeah, FL 33014, and that CASTILLO, Co-conspirator 1, and Co-conspirator 2 are three of its managers.

4

12. Sunbiz records indicated S.C. was listed as the manager of Downtown Delray, but the business was not located at the Purported Downtown Delray Address. Rather, it showed that Downtown Delray was located in Miramar, Florida. Three other businesses, however, were registered to the Purported Downtown Delray Address: (1) WJC Property Investments LLC, with Co-Conspirator 1 listed as the manager; (2) Best Aco LLC, listing Co-conspirator 3 as the president; (3) and Forged Supercenter, LLC, listing PUPO and CASTILLO as managers.

13. Next, USSS agents reviewed the transaction log that the Merchant Processor maintained for the Downtown Delray POS DEVICE. It showed that of the 144 transactions that were reported as fraudulent, approximately 44 were charged using magnetic stripes and/or the Europay, MasterCard, Visa ("EMV") chips of the credit cards.[1] EMV is a payment method based on a technical standard for certain smart payment terminals and automated teller machines. The EMV payment method records the name and partial credit card numbers used on a POS DEVICE when the card is physically used for a transaction. Below are the names that were on the credit cards using the EMV chip, each name appearing multiple times:

   a. PUPO
   b. Co-Conspirator 2;
   c. Co-Conspirator 3;
   d. Co-Conspirator 4;
   e. U.Y.; and
   f. S.D.

---

[1] There is probable cause to believe that the remaining transactions were entered manually. When a credit or debit card transaction is entered in this manner, the owner of the credit card's name is typically not recorded.

14. The remainder of the credit cards transactions were manually keyed in (as opposed to being swiped or using the chip). Many of the card numbers used had the same BIN (the initial sequence of four to six numbers that appear on a credit card to help identify the financial institution) and were sequential. Based on my training and experience, this typically indicates that the credit card numbers were purchased in bulk (usually from the dark web).

15. As mentioned above, a total of $975,565.10 in charges were made with the fraudulent credit cards, which were deposited into the Downtown Delray Account. USSS agents reviewed SCCU records for that account and determined that, between approximately February 20, 2024, to March 13, 2024, most of the money was quickly transferred to other accounts. For example, twelve transfers, totaling $915,639.00, were made to the SCCU Account Ending in x8523 (the second checking account that was linked to the Downtown Delray Account). From that account, 15 checks, totaling $603,720.00, were written to Joel C Property Investment and 10 checks, totaling $361,909.79, were written to Time Pieces Jewelry Inc. According to Sunbiz records, CASTILLO is listed as the manager of Joel C Property Investment and PUPO is listed as having the Title "P" of Time Pieces Jewelry Inc., which I believe means president.

16. Based on my training and experience, the rapid movement of funds discussed in the previous paragraph indicates that the SUBECTS were attempting to conceal the source of the funds that were originally deposited into the Downtown Delray Account and to ensure that they would have access to the money if victims reported the fraudulent charges, which would have otherwise resulted in a chargeback and a recall of the funds. It is important to note that during the relevant period, the accounts linked to the Downtown Delray Application appeared to have no true business

6

purpose. Law enforcement did not identify any funds that were used to pay for inventory, employees, utility bills, or other legitimate business expenses.

### Zuma Dyalysis Center Account

17.   On or about March 14, 2024, one day after the Merchant Processor disabled the Downtown Delray POS DEVICE, a new application, under the name of Co-conspirator 4, was submitted to the Merchant Processor to acquire a different POS DEVICE ("Zuma POS DEVICE"). The new application was under the business name Zuma Dyalysis Center, Inc. ("Zuma") and the listed business address was PUPO's Residence. A search of DAVID records showed that that address is listed as a mailing address for PUPO.

18.   A voided check and bank statement from the Citibank Account Ending in x1402 ("Zuma Bank Account") were submitted along with the application. Like the Downtown Delray Application, the voided check and bank statement did not match the bank's records for the Zuma Bank Account. Citibank records showed that the Zuma Bank Account belonged to an individual named G.M. On April 1, 2024, however, $100 were deposited into the account using an ATM in Miramar, Florida. I compared still shots from the ATM's video surveillance to CASTILLO's driver license photo. The individual making the $100 deposit looks substantially similar to CASTILLO.

19.   USSS agents worked with the Merchant Processor to conduct a controlled delivery of the POS Device. Agents obtained a tracking warrant that authorized the installation and monitoring of a tracking device to place in the POS DEVICE (*see* 24-MJ-02973-Torres). On or about May 7, 2024, prior to making the controlled delivery, agents surveilled PUPO's Residence and observed, among other vehicles, a Red Mercedes G Wagon, with a temporary Florida license plate

DPV1682. According to DAVID, the temporary Florida license plate DPV1682 was registered to Time Pieces Jewelry Inc. and insured by PUPO.

20. On or about May 22, 2024, USSS agents, with the assistance of other law enforcement, conducted a controlled delivery of the Zuma POS DEVICE to the address listed in the Zuma Application, PUPO's Residence. Law enforcement attempted to deliver the POS Device, but no one answered the door. On the second attempt, an individual matching the description of PUPO signed for the package. The law enforcement officer who delivered the package was wearing a body worn camera. I reviewed a still shot from the video footage and compared it to the driver license photo of PUPO and the individual depicted in the two images are substantially similar.

21. After the delivery, a blue Denali left PUPO's Residence. The tracker indicated that it was moving at the same speed as the Denali, so law enforcement followed it. At one point, the vehicle stopped, and the occupants got out and switched seats. Law enforcement observed that CASTILLO and S.D. were the of the occupants of the blue Denali. The vehicle eventually arrived at CASTILLO's residence, where, according to the tracker, it remained until June 22, 2024—the date law enforcement ended its surveillance.

22. On or about May 22, 2024, someone using the debit card ending in x8403 made a transaction of $86 on the Zuma POS DEVICE. A few days later, on or about May 30, 2024, a second transaction was made using the debit card ending in x3811. Chase Bank records indicate that both debit cards belong to an account holder named A.H. The address on the bank account, however, is the same street address that is listed for Time Pieces Jewelry Inc., according to Sunbiz records.

23. Furthermore, the debit card ending in x3811 was also used on the Downtown Delray POS DEVICE on or about March 13, 2024.

24. According to JP Morgan Chase, two other transactions were made using the debit card ending in x8403 at a Publix in Miami on or about May 22, 2024. Law enforcement contacted Publix and a senior loss prevention specialist provided CCTV still images of the persons using the cards. The still images showed that one of the individuals using the card was CASTILLO.

25. On or about June 14, 2024, a request was submitted to the Merchant Processor to change the bank account associated with the Zuma POS DEVICE to the PNC Bank Account Ending in x3973. According to DocuSign, a device using the IP address 66.176.225.61 was used to sign the application. This is the same IP address that was used to submit the Downtown Delray Application and was subscribed to PUPO.

26. Additionally, bank records show that the PNC Bank Account Ending in x3973 belonged to an individual named G.M. On or about June 12, 2024, however, a deposit was made at a PNC drive thru ATM. Still shots from the video surveillance depicted a Hispanic male that substantially matches CASTILLO's description.

[This Space Intentionally Left Blank]

9

## CONCLUSION

27. Based on the aforementioned facts, I respectfully submit that there is probable cause to support the arrest of PUPO and CASTILLO for violating Title 18, United States Code, Sections 1029(b)(2) (conspiracy to commit access device fraud), 1349 (conspiracy to commit wire fraud); and 1956(h) (conspiracy to commit money laundering).

FURTHER SAYETH YOUR AFFIANT NAUGHT.

Respectfully submitted,

*Audrey Fernandes*
Audrey Fernandes
Special Agent
United States Secret Service (USSS)

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **FaceTime** this **1st** day of July 2024.

*Jared Strauss*
THE HONORABLE JARED M. STRAUSS
UNITED STATES MAGISTRATE JUDGE

10